### STATE v. MARY ALICE CLOUD.

(Filed 22 March, 1961.)

**Homicide §§10, 27—**

Where defendant's evidence is to the effect that deceased had knocked her husband down with a table leg and was further threatening both defendant and her husband when defendant shot him, the error of the court in refusing to give the jury defendant's requested instructions upon her right to kill in defense of her husband is not cured by a reference to this principle near the end of the charge when in the main

portion of the charge the right to kill was repeatedly related solely to the right to do so in her own defense.

APPEAL by defendant from *Nettles, E.J.,* November 14, 1960 Special Term, MECKLENBURG Superior Court.

Criminal prosecution upon an indictment charging Mary Alice Cloud with the murder of Marshall F. Grier. Upon arraignment the Solicitor for the State announced he would only ask for a verdict of guilty of murder in the second degree or manslaughter, as the evidence might warrant. The defendant entered a plea of not guilty. Both the State and defendant presented evidence, upon which the jury returned a verdict of guilty of murder in the second degree. The court imposed a sentence of five to seven years in the Woman's Division of State's Prison. The defendant appealed, assigning errors.

*T. W. Bruton, Attorney General, G. A. Jones, Assistant Attorney General, for the State.*
*Basil M. Boyd, for defendant, appellant.*

HIGGINS, J. The evidence for the State disclosed the defendant and her husband, age 70, went to the Hi Fi Club in Charlotte, listened to the band and watched the dance. At about 1:30 at night they went downstairs to the cafeteria for something to eat. Richard Brown and Jessie Lee Bryant, his girl friend, were with them at the table. Brown and Jessie Lee had a dispute and Brown slapped her. At the time, Annie Mae Grier and her husband, the deceased, were working in the cafeteria — Marshall F. Grier in the kitchen and his wife serving the food. Mrs. Grier reprimanded Brown for striking Jessie Lee and as a result Brown and Mrs. Grier were scuffling and Brown picked up a chair. At this time the deceased came from the kitchen with a table leg in his hand. He struck at Brown and by accident hit Cloud on the head. As a result of the blow, Cloud fell to the floor, apparently unconscious. At this time the defendant went to her husband, kneeled down to ascertain his injuries, or to help him up.

To this point the evidence of both parties appears to be in agreement. Thereafter the evidence most favorable to the State tended to show the defendant, while the deceased was still holding the table leg, drew from her bosom a .22 pistol, fired two shots at Grier, one of which caused his death.

The defendant's evidence tended to show that after the deceased knocked the defendant's husband down with the table leg, he was further threatening both the defendant and her husband. Whereupon,

STATE *v.* CLOUD.

the defendant shot Grier to protect her husband and herself from further injury.

In apt time the defendant requested the court to charge the jury:

"Insofar as the right to take human life is dependent upon the surrounding circumstances at the time, the defendant here, acting in defense of her husband would be in the same position as her husband acting in defense of himself. The facts and surrounding circumstances which excuse the killing of a person in defense of oneself, likewise excuses the killing in defense of a member of one's own family and the right in *this case* to defend her husband (from further serious injury) would be co-extensive with the right to defend herself."

The court failed to give the requested instruction but charged the jury repeatedly as to the defendant's rights to kill in her own self-defense:

"In order to have the benefit of this principle of law the prisoner must show that he was free from blame; that the assault upon him was with a felonious purpose, or appeared to be such; that he took life only when apparently necessary to protect himself from death or great bodily harm. But if the one attacked uses such means or force only as may be necessary or as appears to be necessary to repel the attack and save himself from and the death of his assailant ensues, it is justifiable or excusable homicide. If, however, the person attacked used excessive force, or more force than appears to be necessary at the time of the encounter, to repel the assault, and kills his assailant, he is guilty of manslaughter.

"It is the law of this State that if a man provokes a fight by unlawfully assaulting another, and in the progress of the fight he kills his adversary, he will be guilty of manslaughter at least, though at the precise time of the homicide it was necessary for his alleged assailant to kill in order to save his own life. This is ordinarily true where a man unlawfully and willingly enters into a mutual combat with another and kills his adversary, in a plea of self defense it is necessary for the accused to show that he couldn't retreat before the mortal wound was given or retreat before he did so with safety and whether the necessity was real or apparent, kills his adversary for the preservation of his own life or to protect herself from death or great bodily harm.

"In order to be guilty at all the prisoner must have fought willingly but wrongfully. If she fought willingly but rightfully,

that is exclusively in her own defense, no excessive force being employed, she should be acquitted, but she is entitled to have the jury judge her conduct by circumstances as they appeared to her at the time of the homicide."

The substance of the part of the charge just quoted was repeated thereafter more than once in the charge. True, near the end the court did tell the jury that the defendant had the same right to defend her husband that he had to defend himself, and if he was without fault in bringing on the difficulty, that she would have the same right to defend him that he would have to defend himself. However, so overbalanced was the charge on her right to defend herself, we fear the jury lost sight of her principal contention that she shot in defense of her husband.

While her testimony suggests that she had some fear for her own safety, her principal fear was for the safety of the husband who had already been knocked unconscious by the deceased who still retained his weapon, threatened to use it further, and was in a position to do so. Other witnesses lend stronger support to her fears for further injury to the husband than to herself.

Under the facts in this case the defendant was entitled to the instructions requested. *State v. Anderson,* 222 N.C. 148, 22 S.E. 2d 271; *State v. Gaddy,* 166 N.C. 341, 81 S.E. 608; *State v. Greer,* 162 N.C. 640, 78 S.E. 310. The court's charge respecting her right to defend her husband was so inconsequential and so covered up in the charge as to her right to shoot in her own defense, we fear the result was unduly to focus the jury's attention on the weakness and away from the strength of her position.

The verdict and judgment are set aside and the defendant is awarded a

New trial.